UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLONY INSURANCE COMPANY,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | 15-cv-3896 (VSB) |
| ) | |
| AIG SPECIALTY INSURANCE COMPANY,     ) | |
| ) | |
| Defendant.     ) | |
| ) | |

## COLONY INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## ORAL ARGUMENT REQUESTED

/s/Nancy K. Tordai
Nancy K. Tordai (48294 – admitted *pro hac vice*)
Peters & Nye LLP
14 Executive Court, Suite 2
South Barrington, IL 60010
Tel:  847-423-0353
Fax:  847-381-1693
nancytordai@petersnye.com

/s/James Walsh
James Walsh (JW-4605)
 Lauren Smith
London Fischer LLP
59 Maiden Lane
New York, NY 10038
Tel:  212-972-1000
Fax:  212-972-1030
jwalsh@londonfischer.com
lsmith@londonfischer.com

*Attorneys for Plaintiff*
*Colony Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF UNCONTROVERTED MATERIAL FACTS ................................. 4

   I.   The AIG Policy ................................................................................................ 4

   II.  The 2009 Plaza Gardens Lawsuit Against Colony's Insured ............................ 4

   III. A New and Distinct Lawsuit was Filed against Schlup Investment in 2014 and Submitted to Colony for Coverage and Defense .................................................................. 6

   IV. AIG Wrongly Denies Coverage for the Extra-Contractual Claim ...................... 8

ARGUMENT ............................................................................................................. 10

   I.   Standard of Review ......................................................................................... 10

   II.  The Extra-Contractual Claim was First Made During the 2013-2014 AIG Policy Period and is Covered by the AIG Policy ............................................................. 10

   III. The September 2013 Letter is not a "Claim" Under the AIG Policy .................. 15

       A.  Allegations of Wrongdoing and the Threat of Litigation are not a "Claim" ............. 16

       B.  The AIG Policy Does not Permit Treating the Extra-Contractual Claim and the September 2013 Letter as a Single Claim ................................................. 18

       C.  Even if the September 2013 Letter is Found to be a "Claim," the September 13 Letter and the Extra-Contractual Claim are not the Same "Claim" ...................................... 20

          1.  The September 2013 Letter and the Extra-Contractual Claim would be Separate and Distinct "Claims" ........................................................ 20

          2.  Colony's Failure to Settle the 2009 Lawsuit is Immaterial .................. 22

CONCLUSION .......................................................................................................... 23

CERTIFICATE OF SERVICE ................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Alfin, Inc. v. Pac. Ins. Co.*, 735 F. Supp. 115, 118 (S.D.N.Y. 1990) ............................................. 10

*Appleton v. Merchants Mut. Ins. Co.*, 16 A.D.2d 361 (4th Dep't 1962) ........................................ 10

*CheckRite Ltd. v. Ill. Nat'l Ins. Co.*, 95 F.Supp.2d 180, 191 (S.D.N.Y. 2000)............................. 22

*Empire Properties Corp. v. Mfrs. Trust Co.*, 43 N.E.2d 25 (N.Y. 1942) ...................................... 10

*Home Ins. Co. v. Spectrum Info. Techs.*, 930 F. Supp. 825, 846 (E.D.N.Y. 1996)................ 12, 22

*In re Ambassador Group Litig.*, 830 F.Supp. 147, 155 (E.D.N.Y. 1993).................. 12, 16, 17, 18

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 2016 U.S. App. LEXIS 16629, *6 (2nd Cir.
   Sept. 8, 2016) ................................................................................................................. 10

*Purcigliotti v. Risk Enter. Mgmt.*, 240 A.D.2d 205, 205-206 (1st Dep't. 1997).......................... 12

*Turner Constr. Co. v. Am. Mfrs. Mut. Ins. Co.*, 485 F. Supp. 2d 480, 485-486
   (S.D.N.Y. 2007) .............................................................................................................. 10, 15

*United Capital Corp. v. Travelers Indem. Co.*, 237 F. Supp. 2d 270, 274
   (E.D.N.Y. 2002) ............................................................................................................... 10, 18

*Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131, 134 (2nd Cir. 1998) .... 12, 16

*Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, 2010 U.S. Dist. LEXIS 145818,
   *26-27 (S.D.N.Y. Dec. 2, 2010), *reh'g denied*, 2011 U.S. Dist. LEXIS 36364 (S.D.N.Y. Apr.
   4, 2011), *aff'd*, 494 Fed. App'x. 129 (2nd Cir. 2012)...................................................... 12, 13

## Statutes

Fed. R. Civ. P. 56(c) ................................................................................................................. 10

N.Y. C.P.L.R. §5001................................................................................................................. 15

N.Y. C.P.L.R. §5004................................................................................................................. 15

Plaintiff Colony Insurance Company hereby submits this Memorandum of Law in Support of its Motion for Summary against Defendant AIG Specialty Insurance Company on all Counts of Colony's Complaint. The facts underlying this motion are fully set forth in Colony's Rule 56.1 Statement of Undisputed Facts (SOF).

## PRELIMINARY STATEMENT

This litigation involves an insurance coverage dispute between Colony and AIG regarding AIG's obligation to indemnify Colony under a professional liability policy for the settlement and defense costs that resulted from an extra-contractual liability claim made against Colony.

Colony is an insured under AIG Insurance Company Professional Liability Policy No. 01-424-48-29 that was in effect for the October 1, 2013, to October 1, 2014, Policy Period. The AIG Policy extends coverage for damages resulting from a claim made against Colony and reported to AIG during the AIG Policy Period for a "Wrongful Act" in the rendering of or failure to render claims handling and adjusting services. The term "claim," which is not defined in the AIG Policy, has been held by the New York courts to mean a legally cognizable demand by a third party for money damages or other relief owed because of alleged wrongdoing that can be defended, settled, and paid by the insurer.

The AIG Policy does not apply to Colony's contractual obligation to pay policy proceeds owed to Colony's insured. A demand made against Colony to pay its policy proceeds is not the type of demand that the AIG Policy would defend, settle, and pay. Rather, the AIG Policy insures Colony for demands for extra-contractual damages resulting from Colony's wrongful claims handling and adjusting. Therefore, a "claim" under the AIG Policy is a demand made by a third party against Colony for extra-contractual damages owed because of Colony's alleged wrongdoing in handling or adjusting a claim.

1

Plaza Gardens on the Lake Condominium Association (Plaza Gardens) filed a lawsuit in 2009 against Colony's insureds, Schlup Investment, Inc. and Michael Schlup (the 2009 Lawsuit). Colony denied coverage for the 2009 Lawsuit. In a letter dated September 13, 2013, (the September 2013 Letter), the Schlup Insureds' attorney demanded that Colony pay its $2 Million policy limit toward a settlement of the 2009 Lawsuit. AIG's improper coverage denial is based on the incorrect position that this demand was a "claim" against Colony under the AIG Policy. However, there was no demand in the September 2013 Letter that Colony pay extra-contractual damages beyond the $2 Million Colony/Schlup policy limit. The September 2013 Letter, accordingly, does not constitute a "claim" under the AIG Policy. The September 2013 Letter merely constitutes a threat of a potential claim.

A "claim" under the AIG Policy was first made against Colony when Schlup Investment demanded on July 23, 2014, that Colony pay a $20 Million extra-contractual judgment that was entered against Schlup Investment in a new January 9, 2014, lawsuit. The 2014 Lawsuit contained different factual allegations and claims than those alleged in the 2009 Lawsuit. The 2014 Lawsuit was tendered to Colony for defense and indemnity, and Colony informed the Schlup defendant that coverage was not available for the 2014 Lawsuit. Then, on July 28, 2014, Colony received a July 23, 2014, letter from Schlup's counsel demanding that Colony pay a $20 Million judgment that was entered in the 2014 Lawsuit. On July 31, 2014, Colony received a copy of an unfiled Garnishment Complaint in which Plaza Gardens alleged Colony had wrongfully handled the 2009 Lawsuit and the 2014 Lawsuit, and demanded payment of the $20 Million extra-contractual judgment and additional extra-contractual damages for Colony's alleged bad faith and breach of the duty to defend the 2009 and 2014 Lawsuits. Plaza Gardens filed the Garnishment Complaint with the court on August 4, 2014. Before the July 2014 demand, Schlup Investment and Plaza

2

Gardens had made no demand against Colony to pay extra-contractual damages resulting from Colony's allegedly wrongful denial of coverage and defense for the 2009 Lawsuit or the 2014 Lawsuit. Before these demands were made in July 2014 (collectively, the Extra-Contractual Claim), there was nothing for the AIG Policy to defend, settle, or indemnify. So, the "claim" against Colony under the AIG Policy was first made during the October 1, 2013, to October 1, 2014, AIG Policy Period.

Even if the September 2013 Letter is a "claim" under the AIG Policy (which Colony strongly disputes), the AIG Policy covers the Extra-Contractual Claim because the September 2013 Letter and the Extra-Contractual Claim are different "claims" that were first made at different times. Significant intervening events occurred following the September 2013 Letter which resulted in the assertion of the Extra-Contractual Claim. Different allegations and different demands are made against Colony in the September 2013 Letter and the Extra-Contractual Claim. None of the demands contained in the Extra-Contractual Claim were made against Colony in the September 2013 Letter. Moreover, no demand was made against Colony to pay extra-contractual damages before Plaza Gardens secured the $20 Million extra-contractual judgment at the July 15, 2014, trial of the 2014 Lawsuit. Nor can the Extra-Contractual Claim be viewed as "relating back" to the September 2013 Letter under the AIG Policy wording.

The facts material to determination of coverage are undisputed. The Extra-Contractual Claim is, as a matter of law, covered by the AIG Policy. AIG breached the Policy when it refused to indemnify Colony for the settlement and defense costs resulting from the Extra-Contractual Claim. Therefore, Colony is entitled to summary judgment as a matter of law against AIG on all counts of Colony's Complaint.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### I.      The AIG Policy

Colony is an insured under the AIG Policy that was effective October 1, 2013, to October 1, 2014. (SOF ¶1). As stated in the Insuring Agreement, Declarations, and Definitions, the AIG Policy extends coverage for damages resulting from a claim for a Wrongful Act in the rendering of or failure to render Professional Services that is made against Colony and reported to AIG during the AIG Policy Period, and pays Defense Costs, Charges and Expenses incurred by Colony in the investigation, adjustment, defense, and appeal of a claim. (SOF ¶2-3). The term "claim," is not defined in the AIG Policy. (SOF ¶8), and the AIG Policy does not cover or apply to Colony's contractual obligation to pay policy proceeds owed under insurance policies issued by Colony. (SOF ¶9-10).

### II.     The 2009 Plaza Gardens Lawsuit Against Colony's Insured

Colony issued a commercial general liability policy to the Schlup Insureds with a $2 Million limit of liability. (SOF ¶12). On October 13, 2009, Plaza Gardens filed a construction defect lawsuit against Michael Schlup and Schlup Investment, Inc., and other defendants. (SOF ¶13). On February 15, 2013, Colony received a copy of the Second Amended Petition in the 2009 Lawsuit. (SOF ¶14), and a Third Amended Complaint was forwarded to Colony on August 8, 2013. (SOF ¶14). Colony informed the Schlup Insureds that no coverage existed for the 2009 Lawsuit (SOF ¶15), and another insurer, Zurich, defended the 2009 Lawsuit. (SOF ¶15).

In a letter dated September 13, 2013, Thomas Dickerson, counsel for the Schlup Insureds, forwarded a September 13, 2013, letter that he had received from Plaza Gardens. (SOF ¶16). Plaza Gardens' September 13, 2013, letter demanded that the Schlup Insureds and other defendants pay $9 Million to settle the 2009 Lawsuit. (SOF ¶17). According to Plaza Gardens' September 13,

2013, letter, the $9 Million settlement demand consisted of the combined policy limits for all defendants, and the letter stated that $7 Million of the $9 Million settlement demand has already been tendered by three other insurers. (SOF ¶17). Dickerson's September 2013 Letter demanded that Colony pay its $2 Million policy limit to settle the 2009 Lawsuit. (SOF ¶18). The September 2013 Letter made allegations of "bad faith" claims handling, discussed an insurer's fiduciary responsibility to settle claims, and advised Colony that the other insurers had agreed to pay their policy limits. (SOF ¶18). The September 2013 Letter threatened that the Schlup Insureds would resolve the 2009 Lawsuit with the Plaza Gardens plaintiffs and proceed with Plaza Gardens to collect any excess judgment rendered at the trial of the 2009 Lawsuit if Colony did not offer and pay its $2 Million policy limit. (SOF ¶18).

Colony reiterated its coverage position that no coverage existed in a September 19, 2013, email, but expressed willingness to evaluate any further documentation that the Insureds wished to submit. (SOF ¶19). Through September 17, 2013, and September 19, 2013, correspondence, the Schlup Insureds' attorney renewed the policy limit demand, and reiterated the threat to settle with Plaza Gardens and file suit with Plaza Gardens to collect any excess judgment rendered at the trial of the 2009 Lawsuit. (SOF ¶19). The September 19 letter stated that Plaza Gardens' policy limit settlement demand would expire on September 20, 2013, and trial of the 2009 Lawsuit would start on October 1, 2013. (SOF ¶19). No demand was made against Colony to pay extra-contractual damages resulting from any alleged bad faith denial of coverage and defense before the October 1, 2013, inception of the AIG Policy. (SOF ¶21). Having received no further communication regarding the 2009 Lawsuit, Colony closed its file on November 19, 2013. (SOF ¶20).

**III.  A New and Distinct Lawsuit was Filed against Schlup Investment in 2014 and Submitted to Colony for Coverage and Defense**

On January 23, 2014, Colony received a communication from the Schlup Insureds' attorney, putting Colony on notice of a new lawsuit filed by Plaza Gardens on January 9, 2014, this time against Schlup Investment only (the 2014 Lawsuit), and demanding defense and indemnity for the 2014 Lawsuit. (SOF ¶22). While the 2014 Lawsuit identified the condominium construction defects set forth in the 2009 Lawsuit, the 2014 Lawsuit made new, additional, and different factual allegations than those made against Schlup Investment in the 2009 Lawsuit, contained new claims, and did not assert some of the causes of action that were alleged in the 2009 Lawsuit. (SOF ¶23). The 2014 Lawsuit also made new and different damage allegations than were alleged in the 2009 Lawsuit. (SOF ¶23).

Colony informed Schlup Investment that no coverage existed for the 2014 Lawsuit on April 4, 2014. (SOF ¶24). Colony then filed a Complaint for Declaratory Relief on April 14, 2014, against Michael Schlup, Schlup Investment, and Plaza Gardens (DJ Complaint or DJ Lawsuit). (SOF ¶25). Highlighting the fact that the 2009 and 2014 Lawsuits were separate and distinct, the DJ Complaint requested that the Court declare that Colony had no duty to defend or indemnify the 2009 Lawsuit and the 2014 Lawsuit. (*Id.*) In their Answer to the DJ Complaint, the Schlup Insureds did not assert any affirmative defense or file any counterclaim that demanded damages for bad faith arising from Colony's failure to defend or pay its policy limit to settle the 2009 Lawsuit, or even allege that Colony engaged in any bad faith with respect to the 2009 Lawsuit. (SOF ¶26). Nor did the Schlup insureds allege in their Answer that Colony's denial of coverage and defense for the 2014 Lawsuit was made in bad faith. (SOF ¶26). The Schlup Insureds moved to stay the DJ Lawsuit to avoid the adjudication in the insurance coverage lawsuit of the facts at issue in the 2014 Lawsuit. (SOF ¶27).

6

Then, on July 28, 2014, Colony's counsel received a July 23, 2014, letter from Schlup Investment's attorney demanding that Colony pay a $20,153,878.87 judgment that had been entered in the 2014 Lawsuit against Schlup Investment following a July 15, 2014, trial of that lawsuit. (SOF ¶28). The July 23, 2014, letter is the first demand made against Colony for the payment of extra-contractual damages. (SOF ¶29).

On July 31, 2014, Colony received a copy of Plaza Gardens' July 30, 2014, Motion to Dismiss Colony's DJ Lawsuit, which included a copy of an unfiled Garnishment Complaint that Plaza Gardens misrepresented as having already been filed. (SOF ¶30). In the Garnishment Complaint, Plaza Gardens, on its own behalf and on behalf of Schlup Investment, demanded that Colony pay the $20 Million judgment entered against Schlup Investment in the 2014 Lawsuit. (SOF ¶31). The Garnishment Complaint alleged that the $20 Million judgment resulted from Colony's alleged bad faith refusal to defend and settle the 2009 Lawsuit, and its bad faith denial of coverage and defense for the 2014 Lawsuit. (SOF ¶31). The Garnishment Complaint also demanded payment of extra-contractual damages for Colony's alleged bad faith and breach of fiduciary duty in its coverage denial and breach of the duty to defend the 2009 Lawsuit and the 2014 Lawsuit. (SOF ¶31). Through the Garnishment Complaint, Colony learned for the first time that Schlup Investment and Plaza Gardens had entered into an October 1, 2013, settlement agreement, pursuant to which Schlup Investment assigned its claims against Colony to Plaza Gardens, and Plaza Gardens agreed to collect any judgment from Colony only. (SOF ¶32).

The Garnishment Complaint was filed with the court on August 4, 2014, and Colony was served on August 22, 2014. (SOF ¶33). On November 14, 2014, Plaza Gardens filed a motion to amend the prayer for relief in Count I of the Garnishment Lawsuit (SOF ¶34) seeking recovery through the equitable garnishment claim of the full $20 Million judgment based on Colony's

7

wrongful denial of a defense for the 2014 Lawsuit. (SOF ¶34). The $20 Million judgment and the factual adjudications that were made in connection with the entry of that judgment, all of which constitute the basis for Schlup Investment's and Plaza Gardens' demands against Colony, did not exist before the AIG Policy incepted on October 1, 2013. (SOF ¶35).

## IV.   AIG Wrongly Denies Coverage for the Extra-Contractual Claim

The July 23, 2014, demand to pay the $20 Million extra-contractual judgment entered in the 2014 Lawsuit was first reported to Colony's Complex Claims Litigation Director on August 1, 2014. (SOF ¶36). Colony promptly notified AIG of the July 23, 2014, demand on August 20, 2014. (SOF ¶37). A copy of the Garnishment Complaint was subsequently provided to AIG after it had been filed and served on Colony. (SOF ¶38).

The Extra-Contractual Claim alleges Wrongful Acts in Colony's rendering of or failure to render Professional Services. (SOF ¶39). On September 15, 2014, AIG reserved its rights with respect to coverage (SOF ¶40) and requested information from Colony regarding Colony's defense counsel's rates and to evaluate coverage and determine its exposure. (SOF ¶40). Colony relied on AIG's subsequent coverage communications in connection with Colony's defense and attempts to settle the Extra-Contractual Claim, providing all information requested by AIG. (SOF ¶41). A mediation of the Garnishment Action was ultimately scheduled for Monday, November 3, 2014. (SOF ¶42). In the afternoon of October 31, 2014, the Friday before the mediation, AIG supplemented its coverage position, describing it as AIG's "preliminary coverage evaluation" which reserved, for the first time, AIG's rights with respect to whether the Extra-Contractual Claim predated the AIG Policy . (SOF ¶43). AIG also requested that Colony keep AIG closely advised of the upcoming settlement discussions. (SOF ¶44). As a result of this request, during the course of the November 3, 2014, mediation, Colony communicated with AIG regarding the status of the

8

settlement discussions, including the amount of the demands which significantly impacted the AIG Policy. (SOF ¶45).

While the Extra-Contractual Claim did not resolve at mediation, Colony advised AIG during a January 26, 2015, conference call that further settlement discussions were scheduled for February 25, 2015, and that those settlement discussions would likely implicate the AIG Policy. (SOF ¶46-47). AIG took the position for the first time during the January 26, 2015, conference call that it believed serious coverage defenses probably would preclude it from participating and/or committing to a settlement utilizing any AIG Policy proceeds. (SOF ¶48). At the time of the January 26, 2015, conference call, no new facts existed that were pertinent to AIG's coverage determination. (SOF ¶49). AIG led Colony to believe it would contribute to a settlement of the Extra-Contractual Claim through mediation and leading up to the January 26, 2015, conference call (SOF ¶50). After realizing that Colony believed a settlement could be reached at an upcoming settlement meeting scheduled for February 25, 2015, and that any settlement would reach the AIG Policy's coverage, AIG denied coverage for the first time on February 9, 2015. (SOF ¶50).

Ultimately, the Extra-Contractual Claim settled for $5 Million on March 16, 2015. (SOF ¶51). Colony also paid at least $593,417.87 for the defense of the Extra-Contractual Claim. (SOF ¶52). On April 6, 2015, Colony demanded that AIG pay the covered settlement and defense costs that resulted from the Extra-Contractual Claim above Colony's $1.5 Million AIG Policy retention. (SOF ¶54). AIG refused to pay the settlement and defense costs resulting from the Extra-Contractual Claim. (SOF ¶55). As a result of AIG's failure to honor its contractual obligations, Colony has sustained damages of at least $2,093,417.87 for AIG's breach of contract, and is entitled to recover at least $2,093,417.87 from AIG. (SOF ¶53, 56).

Colony, consequently, filed this Declaratory Judgment Action against AIG alleging claims for declaratory relief and breach of contract. (SOF ¶57).

## ARGUMENT

### I.    Standard of Review

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner Constr. Co. v. Am. Mfrs. Mut. Ins. Co.*, 485 F. Supp. 2d 480, 485-486 (S.D.N.Y. 2007) (Citations omitted). While the evidence is viewed in the light most favorable to the non-movant, the non-movant cannot escape summary judgment by vaguely asserting the existence of some unspecified disputed material facts, or through speculation or conjecture. *Id*. (Citations omitted).

New York law applies to the interpretation of the AIG Policy, and the interpretation of the AIG Policy is a question of law. *Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 2016 U.S. App. LEXIS 16629, *6 (2nd Cir. Sept. 8, 2016). An insurance contract should be enforced according to its express terms, because that is the best way to give effect to the parties' intent. *Alfin, Inc. v. Pac. Ins. Co.*, 735 F. Supp. 115, 118 (S.D.N.Y. 1990); *Empire Properties Corp. v. Mfrs. Trust Co.*, 43 N.E.2d 25 (N.Y. 1942). When interpreting an insurance policy, the policy must be read as a whole. *United Capital Corp. v. Travelers Indem. Co.*, 237 F. Supp. 2d 270, 274 (E.D.N.Y. 2002). It is a basic canon of construction that when called upon to interpret insurance policies, the courts will give the language a construction most favorable to the insured. *Appleton v. Merchants Mut. Ins. Co.*, 16 A.D.2d 361 (4th Dep't 1962) (Citations omitted).

### II.   The Extra-Contractual Claim was First Made During the 2013-2014 AIG Policy Period and is Covered by the AIG Policy

The AIG Policy extends coverage to damages that Colony is legally obligated to pay resulting from a claim made against Colony for Colony's wrongdoing in handling or adjusting a

10

claim, and reported to AIG during the AIG Policy Period. *See*, the Insuring Agreement, Declarations and Definitions, which read as follows:

… the Company hereby agrees as follows:

1. **PROFESSIONAL LIABILITY**

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages resulting from any claim or claims first made against the Insured and reported to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act occurs prior to the end of the Policy Period and occurs solely in the rendering of or failure to render Professional Service.

(SOF ¶3, Insuring Agreements, ¶1, as amended by Endorsement 25). The Declarations identify the Policy Period as extending from October 1, 2013, to October 1, 2014. (SOF ¶4, Declarations, Item 2). Wrongful Act is defined as follows:

> **"Wrongful Act"** means any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted.

(SOF ¶5, Definitions, ¶7). Professional Services is defined as follows:

> **"Professional Services"** means services rendered or required to be rendered solely in the conduct of the Insured's claims handling and adjusting ... . (SOF ¶6, Definitions, ¶5).

AIG is also obligated to pay the costs, charges, and expenses incurred by Colony defending such claims. *See*, Insuring Agreements ¶2 (SOF ¶3) which reads as follows:

2. **DEFENSE COSTS, CHARGES AND EXPENSES INCLUDED IN THE LIMIT OF LIABILITY**

> With respect to any such Wrongful Act for which insurance is afforded by this policy under Insuring Agreement 1. above, the Company shall, as part of and subject to the limit of liability, pay on behalf of the Insured Defense Costs, Charges and Expenses. The Company shall at all times have the right but not the duty to assume the defense of any claim or suit against the Insured, and in the event of the exercise of this right the Insured shall provide the Company with full cooperation.

While the AIG Policy covers "claims" made against Colony, it does not define the term "claim." (SOF ¶8). Under New York law, the term "claim," as used in liability insurance policies, is unambiguous and means a demand by a third party against the insured for money damages or other relief owed because of alleged wrongdoing. *Home Ins. Co. v. Spectrum Info. Techs.*, 930 F. Supp. 825, 846 (E.D.N.Y. 1996); *Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.*, 146 F.3d 131, 134 (2nd Cir. 1998); *In re Ambassador Group Litig.*, 830 F.Supp. 147, 155 (E.D.N.Y. 1993).

Therefore, "claim" means "an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." *Purcigliotti v. Risk Enter. Mgmt.*, 240 A.D.2d 205, 205-206 (1st Dep't. 1997). This meaning is clear when reading the AIG Policy as a whole. The AIG Policy covers damages that Colony is legally obligated to pay and that result from a "claim" made against Colony for wrongful claims handling. (SOF ¶3, Policy, Insuring Agreements, ¶1). The Policy also covers fees and costs incurred defending a "claim." (SOF ¶3, Policy, Insuring Agreements, ¶2; SOF ¶7, Policy, Definitions, ¶2). And, AIG must give its prior written consent before Colony admits liability for or settles a "claim." (SOF ¶3, Policy, Insuring Agreements, ¶2).

The AIG Policy unambiguously applies only to demands made against Colony for extra-contractual liability. The Insuring Clause covers damages that Colony is legally obligated to pay and that result from claims for Wrongful Acts occurring solely in the rendering of or failure to render Professional Services. A claim demanding the payment of policy proceeds owed by Colony under the Colony/Schlup Policy is not within this scope of coverage because there is no "wrongful act" and no damage since Colony is simply being required to pay an amount it agreed to pay. *See*, *Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, 2010 U.S. Dist. LEXIS 145818, *26-27 (S.D.N.Y. Dec. 2, 2010), *reh'g denied*, 2011 U.S. Dist. LEXIS 36364 (S.D.N.Y. Apr. 4, 2011),

*aff'd*, 494 Fed. App'x. 129 (2nd Cir. 2012). Colony is not, as a matter of law, legally obligated to pay its contract obligations, since those obligations were voluntarily undertaken. *Women's Integrated Network*, 2010 U.S. Dist. LEXIS 145818 at *23-24. Moreover, because contract damages are uninsurable as a matter of law, *Id.* at *23, a demand to pay only contract damages is also uninsurable and outside the scope of the AIG Policy coverage. Consistent with this legal precedent, Exclusion (u) states that the AIG Policy does not apply to Colony's actual or alleged liability under the Schlup Policy (SOF ¶10), a fact that AIG acknowledged in its coverage communications. (SOF ¶9). Therefore, a "claim" under the AIG Policy is a demand made by third parties against Colony for extra-contractual damages owed because of Colony's alleged wrongdoing in handling or adjusting a claim, not Colony's own contractual obligations under the policy it issued to the Schlup Insureds.

The Extra-Contractual Claim is covered by the AIG Policy, since it is a "claim" for "Wrongful Acts" in the rendering of or failure "Professional Services" that was first made against Colony and reported to AIG during the AIG Policy Period. The Extra-Contractual Claim demands Colony pay extra-contractual damages due to its alleged wrongdoing in handling the Schlup Insureds' claims. (SOF ¶28, 31, 34, 39). The Extra-Contractual Claim demands that Colony pay the $20 Million judgment that was entered in July 2014 against Schlup Investment in the 2014 Lawsuit, an amount that far exceeds the $2 Million Colony/Schlup policy limit. (SOF ¶12, 28, 31, 34). This extra-contractual demand was not made against Colony before Schlup's attorney sent the July 23, 2014, letter. (SOF ¶21, 29). The Extra-Contractual Claim also demands extra-contractual damages for Colony's alleged bad faith denial and breach of the duty to defend the 2009 and 2014 Lawsuits. (SOF ¶31, 34). These demands were also not made against Colony before the Garnishment Lawsuit was filed in August 2014. (SOF ¶31, 33-35). No demand was ever made

13

against Colony to pay the extra-contractual liability that AIG is obligated to indemnify until after the 2014 Lawsuit was tried in July 2014 and the $20 Million dollar judgment was entered on July 21, 2014. (SOF ¶21, 28, 29).

Therefore, the Extra-Contractual Claim that was made against Colony in the July 23, 2014, letter from the Schlup Insureds' attorney and Plaza Gardens' Garnishment Lawsuit is covered by the AIG Policy. The Extra-Contractual Claim indisputably alleges that Colony wrongfully, and in bad faith, handled Schlup's claim for coverage and defense of the 2009 Lawsuit and the 2014 Lawsuit. Thus, it alleges "Wrongful Acts" in the rendering of or failure to render "Professional Service" and is covered under the AIG Policy Insuring Agreement.

It is undisputed that the Extra-Contractual Claim was promptly reported to AIG on August 20, 2014, in accordance with Colony's reporting obligation (SOF ¶36-37), also within the October 1, 2013, to October 1, 2014, AIG Policy Period.

Because the Extra-Contractual Claim is a "claim" for Wrongful Acts in the rendering of or failure to render Professional Services that was first made against Colony and reported to AIG within the AIG Policy Period, it is covered by the AIG Policy and AIG is obligated to indemnify the settlement of the Extra-Contractual Claim and the attorneys' fees and costs incurred defending the Extra-Contractual Claim. AIG's failure to do so constitutes a breach of its Policy.

The Extra-Contractual Claim settled for $5 Million, which includes the uninsured $2 Million of the Schlup/Colony policy limit. (SOF ¶51). Colony incurred $593,417.87 in attorneys' fees, costs, and expenses defending the Extra-Contractual Claim, which constitute covered loss under the AIG Policy. (SOF ¶3, 52-53). After application of the uninsured $2 Million Colony/Schlup policy limit, and the $1.5 Million AIG Policy retention, AIG is obligated to pay Colony $2,093,417.87 for the settlement and defense of the Extra-Contractual Claim. (SOF ¶53).

14

Colony demanded that AIG indemnify Colony for the settlement and its defense costs on April 6, 2015. (SOF ¶54). AIG breached the Policy when it refused to pay Colony. (SOF ¶55). Under New York law, the awarding of interest on breach of contract claims, including breach of third-party insurance policies, is non-discretionary. *Turner Constr.*, 485 F.Supp.2d at 490 (Citations omitted); N.Y. C.P.L.R. §5001. The amount of pre-judgment interest to be awarded on a breach of contract claim is 9% per annum. *Turner Constr.*, 485 F.Supp.2d at 490 (Citations omitted); N.Y. C.P.L.R. §5004. AIG is liable for 9% pre-judgment interest from April 6, 2015, on its indemnification obligation.

### III.   The September 2013 Letter is not a "Claim" Under the AIG Policy

AIG's coverage denial is premised on the erroneous notion that the Extra-Contractual Claim was first made when Colony received the September 13, 2013, Letter from the Schlup Insureds' attorney.[1] The September 2013 Letter demanded that Colony pay the $2 Million Schlup/Colony policy limit to settle the 2009 Lawsuit. This is not a "claim" under the AIG Policy. A "claim" under the AIG Policy is a demand made against Colony for extra-contractual damages owed because of Colony's alleged wrongdoing in handling or adjusting a claim. The demand made in the September 2013 Letter that Colony settle the 2009 Lawsuit by paying the $2 Million limits of the Schlup Policy is not a demand to pay extra-contractual damages as a result of alleged wrongful conduct in handling the 2009 Lawsuit. Rather, the September 2013 Letter demanded that Colony pay the contract obligation that Colony assumed under the Colony/Schlup Policy. Pursuant to the Insuring Agreement and Exclusion (u), the AIG Policy does not apply to Colony's actual or alleged liability under the Schlup Policy, a fact that AIG acknowledged in its coverage

---

[1] The September 17, 2013, and September 19, 2013, letters which repeated verbatim the statements made in the September 13, 2013, Letter (SOF ¶19, Exs. D and F, the September 17 and September 19 letters, respectively), also are not "claims" for the same reasons that the September 13 Letter is not a "claim."

communications. (SOF ¶9-10). The AIG Policy does not apply to the demand made in the September 2013 Letter to settle the 2009 Lawsuit because there was nothing for AIG to defend, settle, or pay in September 2013. AIG had no control over whether Colony paid its own policy proceeds to settle the 2009 Lawsuit. Accordingly, no "claim" was made against Colony in September 2013.

### A. Allegations of Wrongdoing and the Threat of Litigation are not a "Claim"

The allegations made in the September 2013 Letter that Colony handled the Schlup insureds' coverage claim in bad faith are not a "claim." An accusation that wrongdoing occurred is not a "claim" under New York law. *Windham*, 146 F.3d at 134; *Ambassador,* 830 F. Supp. at 155. Moreover, the September 2013 Letter does not demand that Colony pay damages in excess of the Schlup/Colony policy limit because of Colony's alleged bad faith. No "claim" existed since no demand was made against Colony to pay extra-contractual damages because of its wrongdoing in handling or adjusting the 2009 Lawsuit.

The September 2013 Letter is not a "claim" even though it threatened that the Schlup Insureds would resolve the 2009 Lawsuit with Plaza Gardens and proceed with Plaza Gardens to collect any excess judgment rendered at the trial of the 2009 Lawsuit. A threat of litigation is not a "claim" under New York law. *Windham*, 146 F.3d at 134; *Ambassador*, 830 F.Supp. at 155. Moreover, a "claim" does not exist under the AIG Policy unless there has been a demand for extra-contractual damages that can be paid by AIG. The extra-contractual damage of a judgment exceeding the $2 Million policy limit did not exist when the September 2013 letter was sent. (SOF ¶28). In fact, the September 2013 Letter does not demand that Colony pay extra-contractual damages. (SOF ¶18, 21).

16

In *Ambassador*, two letters were sent by the underlying claimant to the insurer. The first letter, which described itself as a claim, stated that the insureds were guilty of wrongdoing that caused damage to the claimant. 830 F.Supp. at 147. The second letter, described as a notice of occurrence, notified the insurer that the underlying claimant believed the former directors and officers were guilty of wrongdoing falling within the scope of coverage. The policy at issue did not define "claim." Holding that a "claim" is a "demand for specific relief owed because of alleged wrongdoing," the court held that the letters are not a "claim," even though they indicated the likelihood, if not inevitability, of a lawsuit. As the court held, "a claim is something more than the threat of a lawsuit." *Id.* at 155. The court further stressed that, "a claim is not merely a contention that some wrongdoing occurred … a claim is a demand for specific relief owed because of alleged wrongdoing." *Id.* at 155. Because both letters lacked a specific demand for relief, the court held that they were not claims.

The September 2013 Letter does not make a specific demand to pay extra-contractual damages because of alleged wrongdoing. At most, the September 2013 Letter notifies Colony of facts and circumstances that could lead to a claim against Colony. The AIG Policy expressly draws a distinction between a notice of facts and circumstances that could lead to a claim and a "claim." Pursuant to Paragraph 4 of the AIG Policy Special Provisions, if Colony becomes aware of an occurrence which may give rise to a "claim" against Colony for a Wrongful Act, and if Colony gives AIG notice of that potential "claim," then any "claim" that is subsequently made against Colony shall be treated as if it was made during the Policy Period when notice of the potential claim was given.[2] The Policy must be read as a whole under New York law, and no terms should

---

[2] Paragraph 4 of the AIG Policy reads as follows:
4.        **SPECIAL REPORTING CLAUSE**

be rendered superfluous. *United Capital*, 237 F. Supp. 2d at 270. As the court held in *Ambassador* interpreting similar policy wording, "the policy confirms that neither notice to the [insureds] of a third party's intention to make a claim nor awareness on the part of the [insureds] of an occurrence that may subsequently give rise to a claim is the equivalent of a claim having been made. They are something different from and antecedent to a claim. " *Ambassador*, 830 F. Supp. at 155. It is clear, therefore, that there is a distinction between a "claim" and a potential claim within the meaning of the AIG Policy. AIG's attempt to equate a notice of a potential claim to a "claim" ignores that distinction and renders Paragraph 4 superfluous.[3]

### B.  The AIG Policy Does not Permit Treating the Extra-Contractual Claim and the September 2013 Letter as a Single Claim

The AIG denial letter argues that the Extra-Contractual Claim was first made in September 2013 because it resulted from Colony's failure to settle the 2009 Lawsuit and the Extra-Contractual Claim alleges that Colony committed the same wrongful acts alleged in the September 2013 Letter. Through this argument, AIG is attempting to interrelate the Extra-Contractual Claim and the September 2013 letter as a single claim that is deemed as having been first made before the AIG Policy incepted. The AIG Policy does not support this argument.

In the AIG Policy, two claims that arise out the same wrongful act or a series of continuous, repeated, or interrelated wrongful acts can be treated as a single claim that is made during an earlier

---

If during the Policy Period or during the extended reporting period (if the right is exercised by the Insured in accordance with Provision 5), the Insured shall become aware of any occurrence which may reasonably be expected to give rise to a claim against the Insured for a Wrongful Act which occurred during or prior to the Policy Period, and provided the Insured gives written notice to the Company during the Policy Period or the extended reporting period (if applicable) of the nature of the occurrence and specifics of the possible Wrongful Act, any claim which is subsequently made against the Insured arising out of such Wrongful Act shall be treated as a claim made during the Policy Period. (SOF ¶1, Policy).

[3] Colony is not obligated under the AIG Policy to give notice of a potential claim. (SOF ¶1, Policy, Paragraph 4, Special Provisions).

policy period *only* when the earlier claim was first made and reported to AIG during the earlier policy period.[4] Since the September 2013 Letter is not a "claim" that was first made and reported to AIG during the 2012-2013 Policy Period, AIG cannot interrelate the September 2013 Letter and the Extra-Contractual Claim. Consequently, the September 2013 Letter and the Extra-Contractual Claim are not a single "claim" under the AIG Policy.

The AIG Policy, when read as a whole, also rebuts AIG's argument that no coverage is provided for "claims" resulting from Wrongful Acts which occurred prior to the October 1, 2013, AIG Policy inception. This argument is based on the application of Exclusion (m), which excludes coverage for "claims" that arise out of Wrongful Acts occurring prior to the October 1, 2013, AIG Policy inception if Colony could have reasonably foreseen that the Wrongful Acts could lead to a claim or suit.[5] Endorsement No. 21 deleted Exclusion (m) from the Policy.[6] Therefore, the AIG

---

[4] *See*, Special Provisions, Paragraph 1, LIMITS OF LIABILITY, which reads as follows:

> The limit of liability stated in the Declarations as applicable to "Each Wrongful Act or series of continuous, repeated or Interrelated Wrongful Acts" is the limit of the Company's liability for all amounts payable hereunder in settlement or satisfaction of claims, judgments or awards and Defense Costs, Charges, and Expenses arising out of the same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts, without regard to the number of Insureds, claims, demands, suits or proceedings or claimants. If additional claims are subsequently made which arise out of the same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts as claims already made and reported to the Company, all such claims, whenever made, shall be considered first made within the Policy Period or the extended reporting period in which the earliest claims arising out of such Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts was first made and reported to the Company, and all such claims shall be subject to one such limit of liability. (SOF ¶1, Policy).

[5] Exclusion (m) of the Policy reads as follows:
> This Policy does not apply:
> m)       to any claim arising out of any Wrongful Act occurring prior to the inception date of the first Insurance Company's Professional Liability Insurance policy issued by the Company to the Insured first named in Item 1 of the Declarations and continuously renewed and maintained in effect with the Company to the inception date of this policy, if on such first inception date any Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a claim or suit. (SOF ¶1).

[6] Endorsement No. 21 reads as follows:
> **EXCLUSION (M) DELETED**
> In consideration of the premium charged, it understood and agreed that paragraph (M) of the **EXCLUSIONS** Clause is deleted in its entirety. (SOF ¶1, Policy).

Policy expressly extends coverage to "claims" that arise out of Wrongful Acts committed before the Policy incepted, even if Colony could have foreseen that the Wrongful Acts could lead to a claim or suit.

### C. Even if the September 2013 Letter is Found to be a "Claim," the September 13 Letter and the Extra-Contractual Claim are not the Same "Claim"

If the September 2013 Letter is determined to be a "claim," it and the Extra-Contractual Claim are still not the same "claim" regardless of whether the Extra-Contractual Claim is the lawsuit that was threatened in the September 2013 Letter. On the contrary, they would be, indisputably, separate "claims."

#### 1. The September 2013 Letter and the Extra-Contractual Claim would be Separate and Distinct "Claims"

Significant intervening events resulted in the assertion of the Extra-Contractual Claim, rendering it and the September 2013 Letter separate "claims." The September 2013 Letter demanded that Colony pay its $2 Million policy limit to settle the 2009 Lawsuit against Michael Schlup and Schlup Investment. (SOF ¶18). Having received no communications from its insureds after September 19, 2013, demanding indemnification for the 2009 Lawsuit, Colony closed the file in November 2013. (SOF ¶20).

The new 2014 Lawsuit contained new and different factual allegations and claims than were made in the 2009 Lawsuit. (SOF ¶23). Schlup Investment tendered the 2014 Lawsuit to Colony for coverage and defense, thus giving Colony an opportunity to defend and indemnify that Lawsuit. (SOF ¶22). Colony denied coverage for the 2014 Lawsuit and filed a declaratory judgment complaint. (SOF ¶24-25).

Affirming that no "claim" for bad faith had been made against Colony in September 2013, the Schlup insureds' response to the DJ Complaint asserted no affirmative defense or counterclaim

seeking recovery of damages for Colony's alleged bad faith failure to pay $2 Million to settle the 2009 Lawsuit. (SOF ¶26). Further evidencing the distinction between the Extra-Contractual Claim and the September 2013 Letter, the Schlup insureds moved to stay the DJ Lawsuit to avoid the adjudication in the insurance coverage lawsuit of the facts at issue in the 2014 Lawsuit. (SOF ¶27). No demand was made against Colony to pay the extra-contractual liability that AIG is obligated to indemnify until after the 2014 Lawsuit was tried in July 2014 and the $20 Million judgment was entered on July 21, 2014. (SOF ¶28-29).

Moreover, Plaza Gardens, the underlying claimant, relied on the significant intervening events that transpired between the September 2013 Letter and the Extra-Contractual Claim to support recovery of the $20 Million judgment entered in the 2014 Lawsuit. Plaza Gardens took the position in the Garnishment Action that it was entitled to recover the $20 Million judgment through its equitable Extra-Contractual Claim due to Colony's breach of the duty to defend the 2014 Lawsuit – circumstances that were non-existent when Colony received the September 2013 Letter. (SOF ¶31, 34). The $20 Million judgment and the factual adjudications that were made in connection with the entry of the $20 Million judgment, all of which constitute the basis for the extra-contractual demands against Colony, did not exist before July 2014. (SOF ¶35).

Due to these significant intervening events and the different allegations, the September 2013 Letter and the Extra-Contractual Claim are separate "claims." They are also separate "claims" because they make different demands against Colony.

The September 2013 Letter demands that Colony pay the $2 Million policy limit to settle the 2009 Lawsuit. (SOF ¶18). No such demand is made in the Extra-Contractual Claim. Rather, the Extra-Contractual Claim demands that Colony pay the judgment that was entered against Schlup Investment in the new 2014 Lawsuit. (SOF ¶28, 31, 34). Moreover, the September 2013

21

Letter does not demand the payment of extra-contractual damages for Colony's alleged bad faith, breach of fiduciary duty, and breach of the duty to defend, as is demanded in the Extra-Contractual Claim. (SOF ¶18). In addition, the Extra-Contractual Claim demands damages for Colony's alleged bad faith and breach of the duty to defend the January 2014 Lawsuit – demands that are not made in the September 2013 Letter, since the January 2014 Lawsuit did not exist when that letter was sent. (SOF ¶¶22, 31, 34).

Because the September 2013 Letter and the Extra-Contractual Claim make two separate and distinct demands against Colony, they are separate "claims." Accordingly, the Extra-Contractual Claim is a "claim" that was first made against Colony during the AIG Policy, and AIG is obligated to fund the settlement and pay the defense of the Extra-Contractual Claim.

### 2.   Colony's Failure to Settle the 2009 Lawsuit is Immaterial

The allegations made in the Extra-Contractual Claim regarding Colony's failure to settle the 2009 Lawsuit are immaterial to the date of claim issue. First, a "claim" does not exist unless there has been a demand for money. The Extra-Contractual Claim does not demand that Colony pay any funds to settle the 2009 Lawsuit. (SOF ¶28, 31, 34). Rather, the Extra-Contractual Claim demands payment of the judgment entered following the trial of the separate 2014 Lawsuit. (SOF ¶28, 31, 34).

Second, the AIG Policy treats "claim" and "suit" as separate and distinct concepts.[7] Because the concepts are distinct, a "suit" may contain several discrete "claims." *Spectrum*, 930 F. Supp. at 846-847; *CheckRite Ltd. v. Ill. Nat'l Ins. Co.*, 95 F.Supp.2d 180, 191 (S.D.N.Y. 2000).

---

[7] See, for example, Definitions ¶2: "'**Defense Costs, Charges and Expenses**' shall mean fees, costs and expenses (including premiums for any appeal bond …) resulting from the investigation, adjustment, defense, and appeal of any **claim, suit** or proceeding arising in connection therewith … ." (Emphasis added) (SOF ¶1, Policy); Special Provisions ¶1: "The limit of liability stated in the Declarations as applicable to 'Each Wrongful Act or series of continuous, repeated or Interrelated Wrongful Acts' is the limit of the Company's liability for all amounts payable hereunder in settlement or satisfaction of claims, judgments or awards and Defense Costs, Charges, and Expenses … without regard to the number of Insureds, **claims, demands, suits** or proceedings or claimants." (Emphasis added). (SOF ¶1, Policy).

Therefore, even if the Extra-Contractual Claim is somehow viewed as making the demand set forth in the September 2013 Letter to pay the policy limit to settle the 2009 Lawsuit, which Colony expressly disputes, the Extra-Contractual Claim contains other discrete "claims" that were first made when the Garnishment Action was filed. These separate and discrete "claims" include: (1) Plaza Gardens' demand for payment and garnishment of the more than $20 Million judgment entered against Schlup Investment in the 2014 Lawsuit; (2) Schlup Investment's demand for damages due to Colony's alleged breach of fiduciary duty and bad faith denial of coverage and defense for the new 2014 Lawsuit; and (3) Schlup Investment's demand for damages due to Colony's bad faith denial of defense for the 2009 Lawsuit. (SOF ¶ 28, 31, 34). Given that the Extra-Contractual Claim involves a distinct plaintiff – Plaza Gardens – who sought to hold Colony liable for damages resulting from a judgment entered against Colony's insured in a new lawsuit and during a distinct period of time – the Extra-Contractual Claim clearly is a "claim" that was first made against Colony during the AIG Policy.

## CONCLUSION

The AIG Policy, as a matter of law, provides coverage for the Extra-Contractual Claim. Accordingly, an Order should be entered granting Colony summary judgment on Count I of its Complaint and finding that:

a. The Policy affords coverage for the Extra-Contractual Claim;

b. The Policy, subject to the $1.5 Million retention and $2 Million limit of the Colony/Schlup Policy, affords coverage for the $5 Million settlement of the Extra-Contractual Claim and for the attorneys' fees, costs, and expenses incurred by Colony in defense of the Extra-Contractual Claim;

c. AIG is obligated to pay Colony $2,093,417.87 in reimbursement of the settlement payment and defense costs resulting from the Extra-Contractual Claim; and

d. AIG is obligated to pay 9% pre-judgment interest on this amount since April 6, 2015; and

e. AIG is obligated to pay post-judgment interest on the judgment.

23

Because the AIG Policy, as a matter of law, provides coverage for the Extra-Contractual Claim, AIG breached that Policy when it denied coverage, and Colony should be awarded all damages resulting from that breach. A judgment should be entered for Colony and against AIG on Count II of Colony's Complaint in the amount of $2,093,417.87, for pre-judgment and post-judgment interest, and for such other further, or different relief as the Court deems just and proper.

Dated: January 20, 2017                    Respectfully submitted,

                                           /s/Nancy K. Tordai
                                           Nancy K. Tordai (48294 – admitted *pro hac vice*)
                                           Peters & Nye LLP
                                           14 Executive Court, Suite 2
                                           South Barrington, IL 60010
                                           Tel:  847-423-0353
                                           Fax:  847-381-1693
                                           nancytordai@petersnye.com

                                           /s/James Walsh
                                           James Walsh (JW-4605)
                                           Lauren Smith
                                           London Fischer LLP
                                           59 Maiden Lane
                                           New York, NY 10038
                                           Tel:  212-972-1000
                                           Fax:  212-972-1030
                                           jwalsh@londonfischer.com
                                           lsmith@londonfischer.com

                                           *Attorneys for Plaintiff*
                                           *Colony Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2017, a true copy of the foregoing **COLONY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served, pursuant to the Federal Rules of Civil Procedure, via (i) ECF filing, and (ii) first class mail service offered by the U.S. Postal Service, addressed to defendant's counsel of record as follows:

> Robert Novack, Esq.
> Bressler, Amery & Ross, P.C.
> 17 State Street
> New York, NY 10004

Executed on: January 20, 2017

> <u>/s/ James Walsh</u>
> James Walsh, Esq.
> *One of the counsel for Colony Insurance Company*

25